No. ——

First Circuit

---

## LAROUILLE v. MERIDIAN LUMBER CO., LTD.

(January 5, 1928. Opinion and Decree.)
(February 15, 1928. Rehearing. Refused.)

---

(*Syllabus by the Editor*)

1. Louisiana Digest—Evidence—Par. 351; Master and Servant—Par. 160 (j).
Where the preponderance of evidence shows that the fracture of employee's leg did not contribute to his death, his widow cannot recover compensation under the Employers' Liability Act No. 20 of 1914, as amended.

Appeal from the Parish of Evangeline. Hon. J. C. Fruge, Judge ad Hoc.

Action by Emelia Larouille against Meridian Lumber Co., Ltd.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

A. V. Pavy, of Opelousas, attorney for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

LECHE, J. Plaintiff sues for compensation alleged to be due as a result of her husband's death.

Jean Baptiste Toussaint, her husband, died on October 9, 1926. He had been employed as a laborer by plaintiff and, during the course of his employment, on May 28, 1926, his leg was fractured a few inches above his ankle. He immediately received medical attention from defendant's physicians and the bones were reset in place. Noticing, after a reasonable delay, that there was suppuration and that the bones failed to unite, defendant's physicians opened the wound and the broken joints were again set, but this time with a Lane plate. Plaintiff's husband during this treatment remained in confinement under the care of defendant's physicians. The second operation was a success, suppuration ceased, the wound healed and the union of the bones progressed sufficiently to enable plaintiff to walk on crutches. During the first days of October following, plaintiff had not yet been able to resume work and was still under the care of defendant's physicians. On October 6th, he had a stroke of apoplexy, rallied somewhat, and on the 9th he had another stroke from which he died.

The only contested issue in the case is not one of jurisprudential law, but is one of fact, depending for its proper solution on a knowledge of the science of pathology. It is purely a medical question, viz: was the death of Toussaint attributable in the remotest degree to the breaking of his leg on May 28th?

Four physicians were sworn as experts, two of them who had operated on Toussaint's leg, and two of them who testified only as experts answering questions based on hypothetical facts. There is really no serious conflict in the testimony of these four gentlemen.

Dr. Archibald, the regularly employed physician of defendant, says in substance that Toussaint died of apoplexy, that the apoplexy was superinduced by interstitial nephritis, ordinarily known as Bright's disease, that Toussaint was also affected with syphilis in its third stage, which facts were ascertained in an autopsy held on October 9th, by himself and Dr. Lett; that neither of these diseases were superinduced or activated by the fracture of the leg; that on the contrary the treatment received by Toussaint, while he was in the hospital and confined with the broken leg, had the effect of assuaging them.

Dr. Lett, who conducts a sanitarium at Lecompte, where Toussaint was operated upon and treated, makes the same diagnosis as Dr. Archibald. Both Dr. Archibald and Dr. Lett say there was no shock undergone by Toussaint and they further say that the fracture of Toussaint's leg had nothing to do in causing his death by apoplexy on October 9th.

Dr. Vidrine, a physician, appointed by the court as an expert, is of the opinion that the breaking of a leg, resetting it twice, is usually attended with a shock sufficient to activate interstatial nephritis and dormant syphilis; that a man could not undergo the breaking of his leg and two resettings without a shock, and this is the only apparent conflict in his testimony with that of Drs. Lett and Archibald.

Dr. Littel, another physician also appointed by the court, is of the opinion that the stroke of apoplexy of which Toussaint died on October 9th, cannot reasonably be attributed to the fracture of his leg on May 29th.

Summing up the opinions of these four experts, two of them, who operated upon Toussaint and treated him, say there was no shock; one of them thinks there was; three of them believe that the fracture of the leg did not contribute to the cause of Toussaint's death, and the fourth merely thinks that it might have been an indirect cause.

Weighing this testimony in the light of the case of Behan vs. John B. Honor Co., Ltd., 143 La. 348, 78 So. 589, it does not sustain the claim of plaintiff. In that case the court held that an accident which causes an existing dormant disease to become active or virulent and superinduces physical disability, furnishes grounds for compensation. It therefore follows as a corollary that physical disability from an existing dormant disease not actuated nor superinduced by such accident, does not give cause for compensation. In other words, the accident must have contributed to the physical disability. In this case the preponderance of the evidence is that the accident did not contribute to the death of Toussaint.

We do not believe that plaintiff has shown grounds for the relief which she seeks, and, for that reason, the judgment of the District Court should be reversed and her demand should be rejected at her costs, and it is so ordered.

## ON APPLICATION FOR REHEARING

LECHE, J. Plaintiff, believing that the opinion rendered by this court on January 5, 1928, in the above matter, is erroneous, has filed a very earnest application for a rehearing, in which she complains, among other grounds, that we failed to condemn the defendant to pay to her the sum of sixty-three and 37-100 dollars acknowledged by defendant to have been due to Toussaint as compensation at the time of his death.

The decree of which applicant complains in no way discharges defendant from liability for this amount which it acknowledges to owe to Toussaint's legal heirs or representatives. It is a credit belonging to Toussaint's succession and defendant is entitled to retain this amount until it may safely pay the same to Toussaint's heirs or legal representatives. There is no evidence in the record to show that plaintiff is an heir of Toussaint or a legal representative of his succession, and we therefore see no authority in law to justify this court in recognizing plaintiff as being entitled to collect and receive this amount.

The other grounds urged by plaintiff for a rehearing have been carefully reconsidered and it would be unreasonable, arbitrary and unjust to ignore the testimony of Dr. Archibald and Dr. Lett simply because they had been employed by defendant to operate upon Toussaint and to treat him. We assume that these gentlemen are reputable physicians and experts in their profession. We see no reason to change or amend our original views.

Rehearing refused.