No. 931

First Circuit

———

BOUDREAUX v. ROSSEN

———

(February 8, 1932. Opinion and Decree.)
(March 8, 1932. Rehearing Refused.)
(March 30, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

———

C. A. Blanchard, of Morgan City, attorney for plaintiff, appellee.

Rene Himel, of Franklin, and Walter T. Gilmore, of Morgan City, attorneys for defendant, appellant.

LeBLANC, J. Plaintiff was employed by the defendant in the latter's moss gin in Morgan City, in the parish of St. Mary. He alleges that on or about November 14, 1930, while in the performance of his duties as such, in the act of feeding moss to the gin, his left hand was accidentally caught in the rollers of the gin and severely injured. He seeks to recover compensation as for total disability for a period of 400 weeks at the rate of $6.82 per week; the amount being based on an average weekly wage of $10.50, which is at the rate of $1.75 for a 6-day week. In the alternative, he pleads, first, that, should his disability be decreed to be partial instead of total, he recover for a period of 300 weeks; and,

secondly, that, should both of those demands be denied, he recover compensation for 150 weeks as for the loss of his hand.

Plaintiff made allegations in his petition under which, had he complied formally with the provisions of Act 156 of 1912, he was entitled to litigate his cause in forma pauperis. Section 2 of that act requires that a plaintiff, in order to exercise the rights granted under it, shall file with his petition his own affidavit declaring that, because of his poverty and want of means, he is unable to pay the advance costs or other costs as they accrue, or to furnish bond for the payment of same. In addition thereto, he must supply the affidavit of a third person declaring that he knows the party and knows his financial condition, and that he firmly believes that he cannot pay the costs in advance or as they accrue or give bond to protect them.

Instead of furnishing these affidavits, the plaintiff merely swore to the truth of the allegations of his petition, among which were those declaring his inability to pay costs or furnish bond. He did, however, furnish the affidavit of two other persons which substantially met the requirements of the act. The district judge signed an order permitting him to prosecute his suit in forma pauperis, whereupon the defendant ruled him into court to show cause why the order should not be set aside. On a hearing of the rule, the court held that there had not been a compliance with the mandatory provisions of the statute, but, as there appeared to have been an honest effort on the part of plaintiff to do so, he was given 10 days within which to make the proper affidavit in accordance with the provisions of the act. Plaintiff reserved its rights against further proceedings under the form in which the defects were cured, and in this court asks that the case be remanded and the action be relegated

to one in which the plaintiff had to pay the necessary costs or furnish proper bond therefor.

Counsel for plaintiff assimilates the requirement of an independent affidavit in an action of this kind to the form required in a mandamus proceeding, in which it was held in the case of Porteau v. Gluck, 149 La. 653, 89 So. 886, that the oath required under article 840 of the Code of Practice could not be supplied by a verification of the allegations of the petition by plaintiff's attorney, as the Pleading and Practice Act, No. 300 of 1914, did not have the effect of repealing these provisions of the Code of Practice. The court states in its opinion in that case that there is no indication in the Pleading and Practice Act of the intention of the Legislature to repeal the rigid requirements of the Code of Practice for obtaining a writ of mandamus or other supervisory writ. Conceding that the ruling in that case as applied to a mandamus proceeding applies with equal force to a proceeding filed under the Pauper's Act of 1912, and that neither was the latter act repealed by the Pleading and Practice Act, it is observed that the facts here are not the same as they appeared in the case cited. There, the verification to the petition had been made by the plaintiff's attorney, whereas here it is in the form of an affidavit made by the plaintiff himself. Here, moreover, plaintiff filed the other affidavit required by the act, of not only one, but of two third parties, and this last affidavit, although not in the exact language of the act, contained the substance of what is required. Be all of that as it may, however, the district judge, in the exercise of what he believed to be his discretion, granted plaintiff time in which to supply the proper affidavits which cured any defect that may have existed, and we are not prepared to say that he made any abuse of that discretion, especially when it is considered that this is a compensation suit in which the trial judge exercises greater discretion than in ordinary proceedings, and is not bound by any technical or formal rules of procedure. The ruling of the court on this matter is affirmed.

Coming now to a consideration of the case on the merits, we find that there is no doubt but that plaintiff was injured on November 11 or 14, 1931, while he was feeding moss to defendant's moss gin. The sole question involved, as we see it, is whether or not his disability in his hand is a result of the injury, or did it exist before.

Plaintiff's disability, if any, is due to an ankylosis of the index and little fingers of the left hand. In this case, it was the second joint of the index and little fingers that were involved. We are given to understand that an ankylosis is a stiffening of the joint, and usually appears in rheumatic conditions or in gout.

Plaintiff's wife, his daughter, son and a lady named Mrs. Theresa Tourere, say that his left hand was entirely free of injury or showed no defect before the accident of November, 1930. Dr. J. H. O'Neil, to whom he was taken for attention following the accident, and who treated his hand, states that the fresh injury consisted of a fracture of the first phalange of the ring finger, lacerations of all the flesh between the second phalange of all his fingers, bruises between the joints, and contusions and lacerations in the palm of the hand. He observed the ankylosis in the second joints of the index and little fingers which he says looked to him as the result of prior injuries; or perhaps of rheumatism. The defendant, J. W. Rossen, his son, Wyatt Rossen, and a witness named John F. Davidson, all testify to having seen plaintiff's left hand before the accident, and that there was some defect in it.

In 1920 plaintiff had employed Mr. W. T. Gilmore as his attorney to bring a compensation suit for an injury to the index finger of his right hand. Mr. Gilmore testifies that in going over his case with him the condition of his left hand was discussed with the view of ascertaining whether it interfered in any way with his handling of an axe, as at that time plaintiff worked in the swamps, and he told Mr. Gilmore that it did. Mr. Gilmore is positive that he observed the left hand, and is equally as positive in his recollection that the index finger was stiff and the little finger crooked. Plaintiff informed him then that he had had a bone felon on the index finger, and that he had also had the third and fourth fingers injured by a saw. Asked to state what difference he saw in the condition of his hand as compared to the time he was consulted by plaintiff, he answers that it is practically the same. Plaintiff does not rebut a word of all this testimony.

With what evidence we have already referred to, plaintiff has failed, in our opinion, to show with that legal certainty required that the disability he claims is the result of his injury of November, 1930. He relies a great deal, as seems to do the trial judge, on the testimony of Dr. Guy Aycock, who states that the condition shows a tearing of the soft structure in the palm of the hand and a stiffening of the tissues on healing, which produced an ankylosis of all four fingers. He finds plaintiff's hand useless to him for any purpose except to balance things, saying that "he cannot grip anything of ordinary size such as a broom, or hoe, spade or anything of that kind." On cross-examination, Dr. Aycock states that he examined the plaintiff's hand about a week before the day on which he was testifying, and which was about seven months after the accident at the moss gin, and then he says that he "picked his hand up and looked it over casually." Plaintiff, it seems, was on his way to see Dr. Crawford about his hand, and Dr. Aycock saw him as he was coming out of the hospital where he thought he would find Dr. Crawford. Further in his testimony, Dr. Aycock makes it plain that it is his opinion that the condition of plaintiff's hand might be caused from an old injury. It may be difficult to reconcile some of the features of Dr. Aycock's testimony with that of Dr. O'Neil, but, with all due deference to Dr. Aycock, and entertaining a high regard for his opinion, we nevertheless believe in this case that it is fairer and safer to accept the testimony of the doctor who saw the patient immediately following the injury and treated him until it was entirely healed, rather than the opinion of the one who only casually examined him several months thereafter.

Dr. O'Neil describes the treatment he administered to the plaintiff, and says that he discharged him after four weeks. After that, we learn from plaintiff's son that he cut stove wood with him, using an axe without much restraint, as he cut from three to four cords of wood in 6 or 7 days, cutting as much as three-quarters of a cord in one day. He was paid $1.75 per cord, and, according to his wife's testimony, quit only because Mr. Clement, for whom he was cutting, did not need any more wood.

It is shown, moreover, that plaintiff had been offered his same job, or any other, by the defendant, at wages of $1.50. This he admits, and says that he declined to take the work, not because he felt that he could not feed the moss gin, as he himself says that "he guessed he could, if there

was anything in it." "But," he adds, "they only offered me $1.50." As the offer at $1.50 per day was a cut of only 25 cents, it strikes us that it was only the normal reduction that was being made in laborers' wages generally, and did not justify plaintiff's excuse not to go back to work.

These further considerations confirm our views, as already stated, that plaintiff has failed to show, by a preponderance of evidence, a disability arising out of the accident of November, 1930, except for the period of four weeks, during which he was treated for his injury by Dr. O'Neil. It is too well established to require the citation of authorities to the effect that a compensation suit presents no exception to the general rule that, in order to recover, a plaintiff must prove his case to a legal certainty. The Supreme Court, in the case of Haddad v. Commercial Motor Truck Co., 150 La. 327, 90 So. 666, 673, on rehearing, with Mr. Justice Provosty as organ, expressed its views very tersely, saying:

"A case must be made out to a legal certainty; this is elementary, and is as true in the case of a suit under the Workmen's Compensation Act, like the present, as in any other. Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734."

To the extent that it allowed plaintiff to recover compensation for one hundred weeks, therefore, the judgment of the lower court was in error, and will have to be changed.

Plaintiff is no doubt entitled to compensation for the time that he is shown to have been under the doctor's treatment and unable to do work. Defendant's counsel concede in their brief that he is entitled to receive 3 weeks' compensation. Dr. O'Neil discharged him, after 4 weeks' treatment, as being able to go back to work.

If his disability was for a shorter period than 6 weeks, it would seem that he is limited to a recovery for 3 weeks, as, under paragraph 4 of section 8 of Act 242 of 1928, it is provided that, in cases where the disability is for a shorter period than 6 weeks, no compensation shall be paid for the first week after the injury.

Counsel for defendant contends, however, that the trial judge fixed the rate of compensation at more than it should have been, for, although plaintiff was paid a wage of $1.75 per day, it is shown that he was not employed every day of the week, working sometimes only 3 or 4 days. It is our opinion, however, that the nature of plaintiff's employment contemplated regular work. He was not engaged in piece or task work as were some of the employees in those cases where the courts made a distinction and applied a different rate of pay than was being claimed. The statute, Act 242 of 1928, p. 361, paragraph 3, section 8, defines the term "wages" to mean "the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury. * * *"

As already intimated, we are of the opinion that the contract of hiring in this case contemplated regular work at the wage of $1.75 for a 6-day week, and therefore hold that the amount of average weekly compensation was correctly fixed by the lower court.

For the foregoing reasons, it is ordered, adjudged, and decreed that the judgment appealed from be now amended by reducing the period of compensation from the period of 100 weeks, beginning with November 14, 1930, to the period of 3 weeks, beginning with that date, and, as thus amended, that it be affirmed.