## HOWERTON v. McCRARY. *

### No. 14271.

Court of Appeal of Louisiana. Orleans.

Oct. 31, 1932.

R. A. Dowling, of New Orleans, for appellant.

Henry & Cooper and John A. Smith, Jr., all of New Orleans, for appellee.

JANVIER, J.

Plaintiff, suing in her own behalf and also for the use and benefit of her two minor children, endeavors to recover compensation under Act 20 of 1914, as amended, for the death of her husband, John B. Howerton, father of the two minors.

She alleges that on or about February 10, 1931, during the course of his employment, the said Howerton "was struck in the eye by a chipping of steel or iron," and that "as a result of the said accident, the eye of John B. Howerton became infected, and his entire body became infected with Tetanic-Encephalitis, from which disease the said John B. Howerton died on the 14th day of March, 1931."

Defendant's answer is, in effect, a general denial. But, when the matter was called for trial in the district court, it developed that defendant's contention was that, if the death resulted from encephalitic tetanus, the said toxemia had not been introduced into deceased's system as a result of the industrial accident which had occurred during employment, but had found entry through a cut or skin abrasion sustained about a week later, when Howerton, in splitting wood at his home, had been hit on the forehead by a piece of wood which he had struck with an axe.

Mrs. Howerton denies that there was a second accident, and contends that only one occurred and that one during the course of the employment, and that the trivial injury from splitting wood had taken place long before the industrial accident on which she bases her claim.

The controversy, then, depends for its decision upon whether the death is shown to have resulted from the industrial accident, or from the domestic mishap.

From a judgment dismissing her suit, plaintiff has appealed.

That the accident which occurred at splitting wood was the more serious and that it was later than the other is established beyond peradventure. Shortly after Howerton's death, the widow, now plaintiff, signed a statement in which appears the following:

"On February 10, 1931, while my husband was cutting fire wood for my kitchen stove at my home at 2829 Gravier St. a piece of the fire wood struck him and caused a small cut or skinned place over his right eye."

It will be noticed that, according to this statement, the accident referred to occurred at home and not in the course of employment, and that the object which struck Howerton was a piece of wood and not a metal chip, as is charged by plaintiff in her petition.

But plaintiff now maintains that, when she signed the said statement, she was not aware of its entire contents, and did not know that in it there was reference to some other accident than that which occurred during the course of the employment.

*Rehearing denied November 14, 1932.

However, the statement is shown to have been carefully read to plaintiff before she signed it. It further appears that the reading was done by a reputable member of the bar of this city, and that there was no attempt to confuse or mislead plaintiff, and that she was accompanied at the time by a friend and neighbor, a Mr. A. E. Rowens, who also signed the statement as a witness to the signature of plaintiff. Mr. Rowens is not produced to testify that there was an attempt made to confuse or mislead plaintiff, or that she was so nervous or excited that she did not understand what she was signing.

That the mishap which resulted from wood chopping occurred after the industrial accident, and that it was to the former and not to the latter that deceased himself attributed his serious condition, is shown by the Charity Hospital records, introduced by agreement of counsel, from which it appears that the "history," as taken from deceased himself when entering the hospital, showed: "That 4 weeks ago while splitting wood a piece flew up and struck him over right eye, causing a lacerated wound. Eye began to swell and he went to doctor who dressed it. No tetanus antitoxin was given. The wound healed, but states he always felt a peculiar sensation over scar. Last Tuesday, March 4, 1931, he began feeling a peculiar twitching of facial muscles, but did not pay any attention to it and kept working up until Sunday, March 9, 1931, when his pharyngeal muscles became involved and abdomen became rigid, slightly."

The said "history" was taken on March 10th, so that, when he used the words "four weeks ago," he referred to the accident of Febuary 10th, which was the wood-chopping accident to which plaintiff herself alluded when, in her statement already quoted, she said "on February 10th, while my husband was splitting wood," etc.

We conclude, then, that there were two accidents, and that the later one, which occurred at home, took place on or about February 10, 1931, and the earlier one at work on or about February 2 or 3, 1931.

That the industrial accident occurred on or about February 2d or 3d, and not on February 10th, as alleged by plaintiff, is shown by a statement of Dr. Gelbke, who treated deceased for the earlier of the two accidents, and who states that "I saw him on February 3rd and treated him until February 7th."

Having reached the conclusion that there were two accidents, we now come to a consideration of whether or not it has been shown that the death of deceased was caused or contributed to, or was hastened by, the industrial accident.

We find in the record most interesting and elaborate discussions with reference to the means by which the germ of encephalitic tet-

anus, which, in lay language, seems to be tetanus of the head, is introduced into the human system, and regarding the time required, after its original introduction, for incubation of the dreaded germs and for symptoms thereof to appear.

The experts, and there are four whose testimony appears in the record, agree that usually symptoms evidencing the presence of the germ appear within a few days, two to fourteen as some of them say, from the time at which it first finds itself introduced into the system, among conditions and surroundings which permit of its reproduction and incubation.

Those who testified as witnesses for plaintiff differ from those on whom defendant relies only in that the former believe that in some cases many weeks, and, in fact, months, in rare instances, may elapse between the introduction of the germ into the system and the manifestation of its manifold reproduction, but even they agree that it is only in rather exceptional cases that such delay is found, and that usually within about two weeks from the time at which the germ implants itself in the system its presence becomes evident.

The industrial accident took place on February 2d or 3d and the domestic mishap on February 10th. On March 10th the sufferer had been admitted into the hospital and the tetanus had taken hold. It thus appears that nearly four weeks after the second accident, which was the one at home, and nearly five weeks after the industrial accident, had elapsed before the presence of the germ made itself manifest. In view, then, of the universal opinion of the doctors that usually not more than two weeks elapse between the introduction of the germ and the manifestation of its presence, it is certainly more probable that, if the said germ entered the system as a result of either injury, it entered through the abrasion caused by the wood-splitting accident, rather than through the minor contusion caused by the industrial accident, because the second accident, in point of time, was nearer to the death than was the first, and also because the second accident actually caused a break in the skin, through which the germ could enter, whereas the other, according to Dr. Gelbke, did not.

We well realize that it cannot with absolute certainty be said that the second injury and not the first was the cause of the death. Nor, however, can it be said positively that it was caused by either of the said accidents. But the burden does not rest upon the defendant to show that the second injury caused the death. Rather is plaintiff, if she is to recover, under the necessity of proving by a fair preponderance that her loss is attributable to the first, because the burden of proof in compensation cases, just as in al-

most all others, rests on plaintiff. See Linn v. Terrell Compress & Warehouse Co. (La. App.) 142 So. 193; Haddad v. Commercial Motor Truck Co., 150 La. 327, 90 So. 666; Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734; Boudreaux v. Rossen, 19 La. App. 188, 139 So. 706; Savin v. T. Smith & Sons, Inc., 145 So. 728, decided October 17, 1932.

In Hammons v. Edwards, 9 La. App. 62, 118 So. 852, is found: "In a suit under the Workmen's Compensation Act No. 20 of 1914 as amended there is no presumption that the injury caused the illness which proved fatal to employee; it must be proved by a preponderance of evidence."

The question is purely a medical one, and, as was said in Larouille v. Meridian Lumber Co., 7 La. App. 460, it depends "for its proper solution on a knowledge of the science of pathology."

█ Far from establishing plaintiff's contention by a clear preponderance, the expert pathological testimony tends the other way, because, whereas the two experts who appeared as witnesses for plaintiff seemed of the opinion that either accident may have caused the death, those tendered by defendant were positive that it could have been attributed only to the second accident, if to either. In the testimony of Dr. Fenno, who testified as a witness for plaintiff, we find the following: "Q. Assuming this man received an injury February 3rd and another injury on February 10th, which injury would more likely have caused this tetanus? A. Nobody can say, sir."

Dr. Menendez, the other expert placed on the stand by plaintiff, apparently attributed the tetanus to the wood-splitting accident, for, in answer to the question as to when, in his opinion, the symptoms developed, he said: "A. The clinical record states that the patient states that four weeks ago, while splitting wood, a piece flew up and struck him over the right eye, causing a lacerated wound."

In the remainder of his testimony Dr. Menendez refers only to this accident, showing plainly that he, at all times, was of the opinion that the infection had resulted from it.

Both Dr. Duval and Dr. Gelbke, who testified as witnesses for defendant, were positive that the first injury could not have caused the skin break, or opening through which the germ entered. Dr. Gelbke, who had treated the deceased for the industrial injury, in referring to that injury, said:

"Q. Did you think it was possible for tetanus to develop subsequently in that eye? A. I think it is impossible.

"Q. Why, doctor? A. There was absolutely no skin abrasions, or breaking of the skin at all, not even a brush burn."

Dr. Duval is equally positive in his opinion that the eye accident had nothing whatever to do with the death.

Plaintiff has clearly failed in her effort to sustain the burden of proving that the industrial accident had anything whatever to do with the death of her husband.

The judgment appealed from is affirmed. Affirmed.