## CRAIG v. STANDARD FRUIT & STEAM-SHIP CO.

### No. 16222.

Court of Appeal of Louisiana. Orleans.

June 22, 1936.

Harold J. Moore, of New Orleans, for appellant.

St. Clair Adams & Son, of New Orleans, for appellee.

JANVIER, Judge.

Plaintiff, Mrs. Robert Craig, seeks to recover compensation for the death of her husband, alleging that the death resulted from an accidental injury sustained in the course of his employment by defendant as a "banana messenger." The sole controversy arises over a question of fact: Whether the cause of the death, which, admittedly, was a strangulated or incarcerated femoral hernia, resulted from accident.

Defendant maintains that there was no accident, but that the said hernia resulted solely and entirely from natural causes.

In the district court there was judgment for defendant. Plaintiff has appealed.

Craig's duties required him to accompany carload shipments of bananas from one city to another and to see that the vents on the said cars were properly regulated so that the atmosphere within each car might be maintained at a temperature most favorable for the proper preservation of the fruit. During the course of one of these trips he became violently ill and was taken to a hospital in Kansas City, where he was attended by a physician chosen by the defendant. His condition was such that the physician ordered him returned to his home in New Orleans. On arrival in New Orleans he was sent to the Charity Hospital, where it was discovered that he was suffering from the hernia to which we have referred. An operation was performed, and his death resulted a few days thereafter.

It is the contention of Mrs. Craig that the hernia resulted from a severe strain, which was caused by the lifting of one of the vents on a freight car, the said vent weighing 25 or 30 pounds. It is the contention of defendant that the hernia resulted from inherent weakness in the abdominal structure of Craig, superinduced by chronic constipation and by an acute condition of constipation, which had rendered it impossible for him to have a nor-

mal bowel evacuation for several days prior to his arrival in Kansas City.

There is no evidence whatever on which may be based the contention that the hernia had accidental or traumatic origin, except that when Craig returned to New Orleans he made certain statements to his wife and in the presence of neighbors to the effect that he had strained himself while lifting one of the vents on one of the cars under his supervision.

It is contended by plaintiff that these declarations, said to have been made by Craig, should be accorded the dignity of dying declarations and should, as such, be taken into consideration as competent evidence. But defendant maintains that these statements are not admissible for two reasons: First, because they were not made shortly before the death occurred; and, second, because even dying declarations are admissible only in homicide cases and may never, so defendant asserts, be considered in civil matters.

Plaintiff counters with the argument that though, in ordinary civil litigation, dying declarations are inadmissible, they may not be excluded in suits brought under the Compensation Law (Act No. 20 of 1914, as amended) because in paragraph 4 of section 18 of that act, as amended by Act No. 85 of 1926 (page 120), it is provided that:

"The Judge shall not be bound by technical rules of evidence or by technical rules or procedure other than as herein provided."

Our brother below concluded to admit the evidence, but, having admitted it, found that, nevertheless, the record as a whole failed to sustain the contention of plaintiff that the hernia had resulted from accident.

We find no previously adjudicated cases in this state concerning the admissibility of dying declarations in compensation cases and none from other jurisdictions have been cited by counsel. In Hicks et al. v. Meridian Lumber Co., 152 La. 975, 94 So. 903, statements made by the injured employee prior to his death were excluded as hearsay, and in Youngblood v. Colfax Motor Co., Inc., 12 La.App. 415, 125 So. 883, our brothers of the Second Circuit refused to consider statements said to have been made by the deceased sometime before his death. Here, too, the court excluded the tendered evidence as hearsay. In neither of the cases was the question of the admissibility of dying declarations considered because in neither was it shown that the injured employee, when he made the alleged statement, had realized that death was impending. Both are referred to by us merely to show that, though the statute as amended requires a relaxation of the "usual common law or statutory rules of evidence," this requirement has not been interpreted as making admissible evidence which is purely hearsay.

But we feel that our discussion of this most interesting problem need not be further prolonged because we, as did the trial judge, have tentatively considered the evidence referred to and have concluded, as he also concluded that it falls far short of proving with any semblance of certainty, that there was any accident at all, or that the said hernia had its inception otherwise than in natural causes.

It is shown to our complete satisfaction that when Craig was taken to the hospital in Kansas City he made no mention to any one of any strain, or of any lifting of a vent. It is further shown that when he went to the Charity Hospital in New Orleans he entirely failed to mention any such occurrence as he is said to have referred to in his so-called dying declarations. There were produced, as witnesses, the physician from Kansas City, also another messenger who accompanied Craig to New Orleans, a woman who seems to have worked in the hotel at which he stayed while in Kansas City and with whom he discussed his condition, another employee of defendant company who acted in the capacity of supervisor of Craig, and other witnesses, including physicians; and to none of them did he utter one word concerning an accident. The doctor to whom he was sent in Kansas City said:

"I asked if he had had an injury or accident of some sort, and he said he had not."

Mrs. Mary Dawson, who worked in the hotel in Kansas City and with whom he discussed his physical condition, gave the following testimony:

"Q. What did he say was wrong? A. He said he thought it was his stomach. He was having a lot of trouble with his stomach.

"Q. Did he at that time say anything to you about having had an accident or having hurt himself? A. No, sir."

Edward P. Burdge, who accompanied Craig from Kansas City to New Orleans

and discussed his condition with him, knew nothing whatever of an accident, or that Craig had been injured while lifting the vent. He makes no mention of any such statement by Craig.

Frederick Rub, who was also employed as a banana messenger and who had supervision over other messengers, discussed Craig's condition with him and said to him: "Robert, what is the matter with you?" He testifies that Craig's answer was: "I don't know. I have not had a bowel action since last Thursday."

Clarence W. Frey, a male nurse, graduate of Johns Hopkins University, was assigned to Craig while he was in the hospital in Kansas City. He states that Craig at no time made any mention of an accident or of an injury.

Andrew B. Johnston, district manager of defendant company at Kansas City, states that he saw Craig on the day on which he returned from the trip during which he is said to have received the accidental injury, and that Craig made no mention of any such injury, but, on the contrary, said that his trouble was that "I have not had an operation since Thursday." It is evident that by "operation" he meant bowel evacuation. Johnston denies positively the statement referred to by Mrs. Craig and to which we shall allude later, in which Craig is said to have stated that Johnston knew of his condition and insisted on his making the trip anyway.

But most convincing of all is the evidence given by Dr. Planche, the surgeon who, at Charity Hospital in New Orleans, operated on Craig after he had returned from Kansas City. It seems that at the Charity Hospital an effort is always made to discover whether, in industrial cases, there is a possibility of the employer, or of the employer's insurer, being held liable because of the fact that, under the law at the present time, the Charity Hospital is permitted to collect for services rendered in such cases. Dr. Planche states that, in spite of the fact that he was therefore interested in discovering whether Craig's condition might have had accidental origin, Craig made no mention to him of any such accident.

As contradictory of this overwhelming evidence, plaintiff offers the so-called dying declaration made by Craig to herself and in the presence of neighbors. She says that:

"He told me he got on top of the fruit car and was pulling out the plug and opening the vent and the pin struck him in his side, and he asked Mr. Johnson to please let him go home, and he told him he had no one to put in his place, and when they came back from making the trip, he would let him go home."

Mrs. D. J. Foster, a neighbor, testifies that it was at the Hospital that she heard Craig say: "If I had not lifted that door I would not be at the hospital."

Mrs. Foster's daughter, who is said to have heard the dying declaration referred to, was not produced as a witness.

Dr. Bradburn, who was called by Mrs. Craig and who examined Craig as soon as he had returned to New Orleans, was not produced as a witness, though he did appear and did testify in support of an application for rehearing. His evidence, however, is not to be found in the record at this time. Plaintiff's failure to produce him on the trial of the case is, we think, significant.

There is contradictory medical evidence concerning the question of whether hernias of the type found here are usually of traumatic origin. As is so often the case, there seem to be two views on the subject, and we need only say that the view that this particular type of hernia is not ordinarily of traumatic origin seems to preponderate.

Plaintiff calls attention to the fact that, after Craig's death, defendant paid her his regular monthly salary for three months, and her counsel argue "that this being so, we must assume that they felt a certain obligation which they would not have felt had Craig died merely of a disease." But for two reasons we are prompted to reject this assumption that these payments constitute an admission of liability:

First, because section 18, par. 5 of Act No. 85 of 1926 (page 120) provides that: "Neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this act."

And, second, the amount paid each month after the death of Craig was not the amount which would have been due in compensation, but was the full amount of the salary on the same basis on which Craig had been paid prior to his injury. In view of the law to which we have referred and

because of the fact that the full amount of the salary was paid, we feel that these payments constituted merely a gratuity on the part of the defendant and cannot be pointed to as an admission of liability.

Counsel for plaintiff argue that the hernia must have been of traumatic origin; that there must have been an accident for the reason that, according to them, plaintiff had been in perfect health prior to the trip from which he returned in practically a dying condition. But in this they are in error. The records of the Charity Hospital and the entire transcript of testimony make it impossible that we reach any conclusion other than that, as a matter of fact, plaintiff, for many years, had been a constant and chronic sufferer from internal disorders and from other diseases and had been a victim of recurrent attacks of severe constipation.

■ In any event, plaintiff has failed to make her case certain. On the contrary, the evidence overwhelmingly preponderates against her contention.

In Savin v. T. Smith & Sons, Inc., 143 So. 728, 729, this court said:

"If there is doubt as to which way the evidence preponderates, then must plaintiff be denied judgment, for, 'in workmen's compensation cases, as in all other cases, plaintiff assumes the obligation of establishing his case with legal certainty.' Linn v. Terrell Compress & Warehouse Co., Inc. (La.App.) 142 So. 193, 195.

"On the necessity that plaintiff prove his case by a preponderance of the evidence, even in compensation cases, the Supreme Court, in Haddad v. Commercial Motor Truck Co., 150 La. 327, 346, 90 So. 666, 673, said: 'A case must be made out to a legal certainty; this is elementary, and is as true in the case of a suit under the Workmen's Compensation Act, like the present, as in any other.'

"In Boudreaux v. Rossen, 19 La.App. 188, 139 So. 706, 708, our brothers of the First Circuit followed the above-quoted rule, using the following language: 'It is too well established to require the citation of authorities to the effect that a compensation suit presents no exception to the general rule that, in order to recover, a plaintiff must prove his case to a legal certainty.'

"To the same effect see Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734."

■ The evidence overwhelmingly demonstrates that the hernia complained of was the result solely of natural causes.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.

McCALEB, J., recused.