**OLIVIER v. DANIEL JEFFREY & SONS, Inc., et al.** 

**No. 1615.**

Court of Appeal of Louisiana. First Circuit.

June 30, 1936.

Walter J. Burke and Lawrence Simon, both of New Iberia, for appellants.

E. J. Beaullieu, of Jeanerette, and O. J. Mestayer, of New Iberia, for appellee.

Le BLANC, Judge.

This is a suit for compensation brought by the widow of Amedee Olivier, for herself and two dependent children. She alleges that her husband died as a result of heart failure which was superinduced by septic infection which had its origin in a severe burn sustained by him on his left foot and leg when he accidently stepped into a hole of hot water on November 26, 1934, while he was engaged by the defendant Jeffrey & Sons, Inc., at their syrup factory in the town of Jeanerette in the parish of Iberia. She claims compensation at the rate of $12.80 per week not to exceed 300 weeks, less 24 weeks which had been paid to her between the time of the alleged accident and her deceased husband's death on June 12, 1935. In addition, she claims the sum of $137 for funeral and burial expenses. Her suit is directed against her late husband's employer and the Employer's Liability Assurance Corporation of London, England, which carried the employer's compensation insurance.

Plaintiff alleges that she has two children, issue of her marriage with her deceased husband, who although of the full age of majority, are physically deformed and crippled to such an extent that they must be fed as they cannot use their hands for any purpose, nor walk, and that they are of immature minds. Due to their said infirmities, she alleges that during their whole life they depended entirely on the earnings of their father for the necessities of life and, as dependents now, are entitled to receive compensation, and that the whole amount due them as well as her should be paid entirely to her as surviving widow for the common benefit of all.

Defendants filed exceptions of no cause of action and of no right of action which were overruled by the district judge, after which the case went to trial on the merits resulting in a judgment in favor of the plaintiff as prayed for, and defendants appealed.

In this court, the exception of no right of action is again vigorously urged by the defendants. That of no cause of action has apparently been abandoned.

The exception of no right of action is based on the want of capacity of the plaintiff to institute this suit on behalf of her two major children who are alleged to be mentally incompetents, the contention being that they can only be represented in court through a duly appointed curator.

There is indeed much merit in the exception, and were the suit an ordinary proceeding instead of one that is regulated by special statute, there can be no doubt but that it would have to be sustained.

Defendants rely on the provisions of the Civil Code and the Code of Practice and also on a provision of the very statute under which this suit is brought, to sustain their contentions. Of course, as just stated, in an ordinary proceedings, the provisions of the two Codes regarding the bringing of suits on behalf of persons mentally incompetent would have to prevail. The provision of the workmen's compensation statute to which we have reference is found in section 16, subsection 1, of Act No. 20 of 1914, as amended by Act No. 38 of 1918, which reads as follows:

"That in case an injured employee is mentally incompetent or a minor or where death results from the injury, in case any dependent as herein defined is mentally incompetent or a minor, at the time when any right, privilege or election accrues to him under this act, his duly qualified curator or tutor, as the case may be, may, in his behalf, claim and exercise such right, privilege or election, and no limitation of time, in this act provided for, shall run, so long as such incompetent or minor has no curator or tutor as the case may be."

It is our opinion that the purpose of that provision is distinctly to regulate the matter of prescription as regards the rights of minors and mentally incompetents in claims arising under the statute, and is not aimed at regulating the manner in which the proceeding is to be instituted on their behalf. It is noted that it is not made mandatory that the curator or the tutor, as the case may be, claim the right in behalf of the incompetent or minor, but that such curator or tutor *may* exercise the right and it is from such time only as such right is exercised by the curator or tutor, that prescription begins to run against the incompetent or minor. (Italics ours.) That provision of the statute received a full and careful consideration at the hands of the Court of Appeal, Second Circuit, in the case of Gospel v. Southern Carbon Co., 4 La. App. 272, wherein it was reconciled with another provision of the act which makes the appointment of a tutor unnecessary in regulating the payment of compensation to a child or children, unless it be that there is no surviving parent. This provision is found in paragraph (j) of subsection 2 of section 8 of the statute, as amended by Act No. 43, page 74, of 1922.

It is urged that the exception provided in that section is restricted to tutors of minors and cannot be extended by analogy to curators of incompetents. It is true that reference is made particularly to tutors, but that section of the law, as we understand it, is to regulate the payment of compensation in cases where there is a surviving widow or widower and a child or children and it specifically provides that such payment shall be made "entirely to the widow or widower for the common benefit of such widow or widower and the child or children."

In defining the terms "child" and "children" as used in the act, paragraph (m) of the same subsection makes no distinction between those who are minors and those who are of the age of majority. It seems to us therefore in prescribing that payment, in a case where there is a surviving widow or widower and a child or children, shall be made entirely to the surviving spouse for the common benefit of such spouse and child or children, it was intended that it be so made and be so used whether the child or children be minors or of age, the only proviso being that they come within the class of dependents entitled to compensation. The liberal interpretation which courts have to accord the statute warrants such conclusion.

We are of the opinion therefore that the exception was properly overruled in the lower court.

On the merits, we find that the seriously disputed point in the case is whether the death of plaintiff's husband resulted from a heart affection brought about by a poisoning of the blood stream which found its origin in the injury to his right foot caused by the burning, or did it result from a gradual development of that disease commonly known as hardening of the arteries having no causal connection whatever with the injury he received.

There is found in the record the testimony of four doctors. One, Dr. Brown who was in attendance on the decedent from the time he sustained the injury until his death. Another, Dr. Dauterieve who was once called in consultation with Dr. Brown. Another, Dr. Ficklin to whom the injured employee was sent in New Orleans, at the Baptist Hospital, by the insurance carrier; and the last, Dr. Lawson, a pathologist who examined vital organs of the decedent after he died and also made an examination of specimens of matter that were taken from the injured parts of the foot or leg.

Dr. Dauterieve's testimony in our opinion is of little or no value in solving the direct question at issue. Dr. Ficklin's leaves us in considerable doubt concerning it, and in the matter of medical testimony we are practically reduced to the opposing views of Drs. Brown and Lawson. If we accept the testimony of Dr. Brown, as did the district judge, we do not see how we could decide otherwise than as he did. On the other hand, taking Dr. Lawson's testimony on the cause of the decedent's death, the case could hardly be decided otherwise than in favor of the defendants.

We say that Dr. Ficklin's testimony leaves us in considerable doubt because he admits that on his visit to the decedent on the day before he died, some of the symptoms presented "were very suggestive of heart trouble which accompanies infection." He is of the opinion that in the month of December following the accident, decedent had had an attack of heart trouble, but that in the month of April following when he saw him, an examination of the heart was negative. He is of the further opinion that between the time he saw him in April and up to when he was called to Jeanerette

250

to see him in June, his heart seemed to have recovered entirely. If the decedent was suffering from hardening of the arteries which as we understand from Dr. Lawson's testimony may have existed for more than a year prior to death and is usually a progressive disease, it is difficult to reconcile those findings with the opinion entertained by Dr. Ficklin regarding the condition of the deceased and the cause of his death. It seems to be only after Dr. Ficklin read the report of the pathologist, Dr. Lawson, that he changed his mind regarding the real cause of death. Up to that time, he states himself, that there was "a very considerable doubt in his mind." Dr. Ficklin did not make the autopsy himself, neither did he assist in the pathological examination made by Dr. Lawson and his final opinion therefore can only be said to reflect the findings of Dr. Lawson.

■ As between Dr. Brown and Dr. Lawson, we have this circumstance to consider. Dr. Brown was the first doctor called after the decedent sustained the injury and was in rather close attendance on the case until he died. He watched the course of the injury and kept in touch with the general condition of the patient throughout, giving him all the treatment he received except what was administered at the Baptist Hospital when he was under the care of Ficklin for a few days. Dr. Lawson, on the other hand, never did see Mr. Olivier and rests his opinion entirely on his examination of the heart and lungs and the exudate from the sore foot sent to him after an autopsy had been held. In commenting upon a situation involving the testimony of one doctor who had been in immediate and continued contact with an injured employee from the time of his injury to the date of the trial, which was in conflict with that of experts on both sides, the Court of Appeal, Second Circuit, in the case of Brinson v. Arkansas Natural Gas Corporation, 152 So. 381, said that it accepted the former's testimony as supporting the contentions of the plaintiff, because by reason of that doctor's close contact with the case, he should know more about the condition existing than any other physician. This court gave expression to the same thought in the case of Boudreaux v. Rossen, 19 La.App. 188, 139 So. 706.

There are certain corroborating facts which add weight and strength to Dr. Brown's opinion that Mr. Olivier's collapse in June, following the accident in November the year previous, if not directly attributable to a heart infection brought on by septic poisoning emanating from the wound in his leg and foot, resulted indirectly therefrom. It is shown that he was a man of good health who had never missed a day's work when there was work to do, and always he was engaged in hard manual work. When not engaged in the syrup mill, he worked as a plumber and pipe fitter. He was fifty-nine years old when injured and had never been known to complain of any heart ailment. From the time of his injury, he never showed signs of much improvement and never was able to walk around without crutches. His condition showing no improvement, he was sent to Lake Charles and later in April, four months after the accident, to the Baptist Hospital in New Orleans. There, some sort of appliance called a "una boot" was placed on his leg apparently to promote healing of the wound. Dr. Ficklin insisted that he return to the hospital at stated intervals as he did not want that boot to remain on too long at one time. On May 23, 1934, he saw him, and found him improving, but on removing the una boot, the lower blade of the bandage scissors ripped through the new formed skin, producing a superficial gash about three inches in length. This was treated and bandaged and the patient sent home. It was on June 10, 1934, not three weeks after this, that he collapsed with a severe pain in the foot accompanied by chill and high fever, and according to Dr. Brown, with evident symptoms of septic infection from an ulcer which had formed under the foot right at the spot where it had been bandaged after having been gashed as stated by Dr. Ficklin. Dr. Brown also found an enlarged lympathic gland which showed that poison was being absorbed. His diagnosis was septic poisoning as he could not otherwise account for the symptoms presenting themselves.

When Mr. Olivier became violently ill on June 11th, Dr. Ficklin was summoned from New Orleans and went to visit him. His testimony regarding his examination at that time does not materially contradict that of Dr. Brown and, as we have already stated, he admitted that the symptoms which presented themselves were to him very suggestive of heart trouble which accompanies infection. Therefore, it is only from Dr. Lawson that we have a positive dispute of Dr. Brown's diagnosis, and yet, as we have seen, his own opinion has to

rest entirely on his pathological findings after the autopsy and without having had the advantage of the close and intimate contact Dr. Brown had with the case and of seeing the immediate symptoms on which he based his diagnosis.

Counsel for defendants state that if this court is to uphold the judgment of the district court, some reason for not taking Dr. Lawson's evidence into consideration must be given. We have given it every consideration we could, but it is entitled to no more weight than is that of Dr. Brown's which appears to us to be the more plausible and rather well supported by the various facts and circumstances which we have mentioned.

We certainly find no manifest error in the findings of the district judge, and as the points discussed are the only ones we find disputed, the judgment will be affirmed.

Judgment affirmed, defendant to pay the costs of appeal.