337 So.2d 536 (1976)
James L. HIGHSTREET
v.
REGENCY APARTMENT HOTEL and Reliance Insurance Company.
No. 7743.
Court of Appeal of Louisiana, Fourth Circuit.
July 29, 1976.
Rehearing Denied October 13, 1976.
*537 Charles J. Pisano, New Orleans, for plaintiff-appellant.
O'Keefe, O'Keefe & Berrigan, Peggy M. Vicknair, New Orleans, for defendants-appellees.
Before SAMUEL, LEMMON and BEER, JJ.
BEER, Judge.
Plaintiff-appellant, James Highstreet, claims total and permanent disability due to *538 injuries resulting from an on-the-job fight with his co-employee, Harold Habighorst, on January 20, 1974. He was paid compensation benefits totalling $500.50 from January 23, 1974 through April 9, 1974. Defendant-appellees, Regency Apartment Hotel and Reliance Insurance Company (hereafter, "Employer"), thereafter resisted his claim, asserting that Highstreet willfully precipitated the encounter and, further, that he was not disabled thereby.
At trial, the only direct testimony concerning the incident was that given by plaintiff. Harold Habighorst did not testify. Instead, Employer offered Habighorst's deposition in lieu of his appearance. Over Highstreet's counsel's timely objection to its introduction on the ground that the taking of the deposition had been improperly noticed, it was admitted into evidence. The facts relative to the taking of the deposition are not seriously controverted. On the day it was taken, Highstreet's counsel received telephone notice but was unable to attend. There had been previous unsuccessful attempts to locate Habighorst, and both counsel were generally aware of the fact that his deposition might have to be taken on short notice. Nevertheless, cross-examination was, thus, foreclosed, and the resistance to the introduction was substantially well grounded.
Joseph Fuller, the supervisor of Highstreet and Habighorst, testified regarding his conversations with Highstreet and Habighorst on the day following the accident. This testimony, also, was admitted over timely objection.
After trial, the court dismissed Highstreet's suit and indicated, in written reasons, that the Employer had sufficiently met its burden of proof required by LSA-R.S. 23:1081, which provides, in pertinent part:
"No compensation shall be allowed for injury caused (1) by the injured employee's willful intention to injure himself or to injure another . . .
"In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injuries sustained by an employee for the causes and reasons set forth in this Section, the burden of proof shall be upon the employer."
The record discloses that James Highstreet, a 74-year old engineer, became upset due to the fact that Habighorst was 2½ hours late in relieving him from his 7-3 shift on January 20, 1974. At 5:25 p.m., Highstreet tried to reach his supervisor, Joseph Fuller, but was successful in only contacting the latter's wife. He asked that Fuller be informed that he (Highstreet) intended to finish Habighorst's shift and, toward that end, he was going to "pull" Habighorst's time card. At 5:30 p.m., Habighorst showed up, located Highstreet and, after a brief but apparently bitter exchange of words concerning Habighorst's tardiness and Highstreet's intentions to finish the shift, Highstreet maintains Habighorst commenced to beat him up. This is totally contradicted by Habighorst's deposition which indicates that as the verbal exchange between himself and Highstreet heated up, Highstreet reached for a mace device [1] and attempted to squirt mace in his eyes, which caused him to attempt to subdue him with as much force as was required in the circumstances.
Parts of Highstreet's testimony, not dealing with the incident itself, are contradicted by his supervisor, Fuller. For example: Highstreet testified that he had been chief engineer and that Fuller granted him authority to "pull" time cards as in the instant case. Fuller flatly contradicts this assertion as well as Highstreet's claim that at the post incident meeting which took place in Fuller's office, Habighorst raised his hand against Highstreet and threatened him. In the same vein, Dr. Robert A. Robinson *539 states he never treated Highstreet, while Highstreet, in his testimony, indicates the contrary. These examples were supported by competent evidence and properly considered by the trial court in making its credibility assessment.
Although LSA-R.S. 23:1317 calls for relaxation of the technical rules of evidence within discretionary limits, such use of hearsay evidence is generally tempered. We find it most often allowed in cases which involve a claim for death benefits due the dependents of deceased employees who testify as to statements of the decedent just prior to his death. See, generally, Arrington v. Singer Sewing Machine Company, 16 So.2d 145 (La.App. 2nd Cir., 1943); Clifton v. Arnold, 87 So.2d 386 (La.App. 1st Cir., 1956); Allen v. Milk Haulers, Inc., 278 So.2d 871 (La.App. 1st Cir., 1973); Montgomery v. Delta Concrete Products Company, 290 So.2d 769 (La.App. 1st Cir., 1974), not considered 294 So.2d 823 (La.); Johnson v. Cajun Enterprises, 293 So.2d 617 (La.App. 3rd Cir. 1974); and Doss v. American Ventures, Inc., 224 So.2d 470 (La.App. 4th Cir., 1969), writs refused 254 La. 829, 227 So.2d 373, appeal after remand 248 So.2d 358 (La.App. 4th Cir., 1971) reversed on other grounds 261 La. 920, 261 So.2d 215.
The deposition of Habighorst is, also, of substantially diminished evidentiary value. Reasonable written notice of the deposition was lacking and cannot be substituted by oral communication with plaintiff's attorney's office. The requirements of LSA-C.C.P. Articles 1428 and 1451 were not met. See: Silva v. Allen, 256 So.2d 447 (La.App. 4th Cir., 1972). Since the source of the discovery articles are, generally, the similar provisions in the Federal Rules of Civil Procedure, we look to them: In Associated Transport, Inc. v. Riss and Company, 8 F.R.D. 99 (N.D.Ohio, 1948), the court, in suppressing use of a deposition, stated:
"The purpose of Rule 30(a) is plainly to give a party full notice of the time and place that a deposition is to be taken. If the other party is required to postpone the taking of the deposition . . . for any . . . reason, then the notice originally given becomes meaningless and a new notice is needed. There is nothing in the Rules to indicate that one written notice satisfies the requirement even though the deposition is not taken until a later date . . .
"One of the very purposes of the rule with respect to written notices is to make it unnecessary to go to such lengths, as here, to determine whether or not one of the parties knew a deposition was to be taken."
The question of "reasonable notice" was addressed in RCA v. Rauland Corporation, 21 F.R.D. 113 (E.D.Ill., 1957), which held that:
"The Federal rules do not specify any minimum notice of the taking of depositions, and the court must determine in any case what is reasonable under all of the circumstances."
While the trial judge has even greater discretion than usual in Workmen's Compensation cases and is not bound by formal rules of evidence (see Boudreaux v. Rossen, 19 La.App. 188, 139 So. 706 (1st Cir., 1932), the "courts are not authorized to disregard the rules of evidence and rely on evidence that is clearly inadmissible." Williams v. Jahncke Service, 217 La. 1078, 48 So.2d 93 (1950).
Thus, the admission into evidence of the hearsay testimony of Fuller and, to an even greater extent, the admission into evidence of the deposition of Habighorst was, in our view, questionable. Without this evidence, there is little support for the contention that Employer has met its evidentiary burden with respect to the LSA-R.S. 23:1081 defense as required by the Supreme Court in Velotta v. Liberty Mutual Insurance Company, 241 La. 814, 132 So.2d 51 (1951).
Yet, even if we completely disregard Habighorst's questionably admitted deposition and markedly limit the evidentiary impact of Fuller's testimony so as to consider it only from the standpoint of its effect on the credibility determinations that the trial court has made with respect to Highstreet's testimony, we are still obliged *540 to agree with the result reached by the able trial judge. It is apparent from his written reasons that he has made a generally negative credibility determination with respect to Highstreet, and we have no reason to take issue with that determination in view of the wide discretion that is left to the trial court in exercising this important judicial function. This credibility determination becomes extremely important as we turn to a consideration of the case from the following standpoint: Even if the Employer failed to carry the burden of proof required by Section 1081, Highstreet must, nevertheless, establish his disability claim by a preponderance of the evidence. The evidence, as a whole, must indicate, more probably than not, that his disability results from a work-connected incident. In making this determination, we are much guided by both the medical evidence and the trial court's estimate of the claimant's general credibility (see: Montgomery v. Delta Concrete Products Co., Inc., 290 So.2d 769, Toomer v. Highlands Insurance Company, 295 So.2d 844 (La.App. 1st Cir., 1974). Benefits can not be paid if the plaintiff fails in his proof that the incident about which he complains is the cause of his disabilityeven if he is, in fact, disabled and even if the facts relative to the incident are resolved in his favor.
Dr. William A. Roy, a board certified general surgeon, found no indication of any disability ascribable or attributable to the occurrence of Mr. Highstreet's being beaten up by Mr. Habighorst. His findings indicated that prior to the incident in question, Mr. Highstreet suffered from long standing arthritic degenerative changes which, though limiting and perhaps serious, were not in any way related to the incident which forms the basis of this litigation. Although Dr. Roy found that Mr. Highstreet was disabled from most types of labor as a result of these arthritic degenerative changes, he, nevertheless, was categoric in his unwillingness to associate this disability with the beating described by Mr. Highstreet. He makes the determination "without a shadow of a doubt" that the degenerative arthritic changes which form the basis for Mr. Highstreet's disability are not the result of the beating that he allegedly experienced.
Dr. Morris Klinger saw Mr. Highstreet soon after the incident and prior to Dr. Roy's examination. Although he believed that the beating experienced by Mr. Highstreet could take somewhat more time to heal because of his arthritic condition, he was also firmly of the view that Highstreet's degenerative arthritic condition was one of long standing and not caused or, for that matter, clearly aggravated by the beating except to the extent that a person suffering from such degenerative disease could and, perhaps in this instance, did require a longer period for recovery. Dr. Klinger's opinion is further conditioned by his observation that he had no actual knowledge of Highstreet's condition prior to the beating incident but was obliged to observe that the degenerative changes were long term and not traumatically induced.
When the testimony of the physicians is considered in light of the trial court's general credibility determination with respect to Highstreet's testimony, it causes us to conclude that the trial court's judgment in dismissing Highstreet's suit was not in error. The payment of compensation to Highstreet from January of 1974 through April of 1974 covered the time required for him to recuperate from the effects of the altercation with Habighorst. Furthermore, a determination that he was thereafter, as able as he had been before the altercation to proceed with the work at hand was not erroneous.
Accordingly, the judgment of the Civil District Court for the Parish of Orleans is affirmed. Each party is to bear its own costs of this appeal.
AFFIRMED.
NOTES
[1] According to Habighorst, Highstreet's habit of carrying the mace device, which apparently was of the "cylindrical" or "fountain pen" variety, was generally known, Highstreet having previously indicated that he lived in a neighborhood that required him to carry the device for protective purposes.